

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00649-CV

**IN THE INTEREST OF B.G.M.**, I.G.M., and O.M.M., Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-01163
Honorable Richard Garcia, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:      Sandee Bryan Marion, Chief Justice
              Marialyn Barnard, Justice
              Patricia O. Alvarez, Justice

Delivered and Filed:  February 1, 2017

AFFIRMED

Appellant G.V.M. appeals the trial court's order terminating his parental rights to his children B.G.M., I.G.M., and O.M.M.[1]  G.V.M. asserts the evidence is neither legally nor factually sufficient for the trial court to have found by clear and convincing evidence that terminating his parental rights is in his children's best interests.  Having reviewed the evidence, we conclude it is legally and factually sufficient to support the findings, and we affirm the trial court's order.

### BACKGROUND

On May 19, 2016, the Department of Family and Protective Services received a referral stating that on May 18, 2016, G.V.M. allegedly shot and killed the children's mother and then shot himself.  G.V.M.'s children were at home at the time of the shooting and they heard the gunshots.

---

[1] To protect the minors' identities, we refer to the father and the children using aliases.  *See* TEX. R. APP. P. 9.8.

B.G.M., the oldest child, entered the parents' bedroom. B.G.M. discovered both parents lying on the floor, bleeding from gunshot wounds, and B.G.M. called the police. Both parents were taken to the hospital. The mother was pronounced dead, but G.V.M. survived. G.V.M. was later arrested and indicted for murder. The Department removed the children and placed them with G.V.M.'s mother.

At the bench trial on September 21, 2016, G.V.M. appeared by video conference because he was incarcerated, but he did not testify. After the attorneys examined the witnesses, the trial court found that G.V.M. met two statutory grounds for termination and that termination of his parental rights was in the children's best interests. The trial court terminated G.V.M.'s parental rights, and he appeals. G.V.M. does not challenge the trial court's findings on the statutory grounds. Instead, he asserts the evidence is neither legally nor factually sufficient to support the trial court's finding that terminating his parental rights was in his children's best interests.

### EVIDENCE REQUIRED TO TERMINATE PARENTAL RIGHTS

If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) ("[T]he same evidence may be probative of both issues."); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b).

## STANDARDS OF REVIEW

### A.    Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### B.    Factual Sufficiency

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord H.R.M.*, 209 S.W.3d at 108.

## BASES FOR TERMINATION

### A.    G.V.M.'s Course of Parental Conduct

The trial court found by clear and convincing evidence that G.V.M.'s conduct was grounds for termination under subparagraphs (D) and (E) of section 161.001(b)(1). *See* TEX. FAM. CODE ANN. § 161.001(b)(1). On appeal, G.V.M. does not challenge the trial court's statutory grounds findings.

### B.    Best Interests of the Children

Instead, G.V.M. challenges the sufficiency of the evidence that terminating his parental rights is in the children's best interests. *See id.* § 161.001(b)(2). We briefly review the law

pertaining to determining the best interest of the child. The factors a court uses to ascertain the best interest of the child may include the following:

> (A) the desires of the child;
> (B) the emotional and physical needs of the child now and in the future;
> (C) the emotional and physical danger to the child now and in the future;
> (D) the parental abilities of the individuals seeking custody;
> . . .
> (G) the stability of the home or proposed placement;
> (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
> (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors); *see also* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2015) (listing statutory factors for "determining whether the child's parents are willing and able to provide the child with a safe environment").

Applying each standard of review, we examine the evidence pertaining to the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *E.N.C.*, 384 S.W.3d at 807; *J.F.C.*, 96 S.W.3d at 284.

### EVIDENCE OF BEST INTERESTS OF THE CHILDREN

At the one-day bench trial, G.V.M. was represented by counsel and appeared by video conference. His counsel advised the court that G.V.M. "told me specifically that he did not want to come in and participate today, he felt that that would be just agreeing to what the State's seeking." The trial court then heard testimony from the Department's investigator and caseworker, and recommendations from the children's guardian ad litem.

### A. Marvin Farris's Testimony

Marvin Farris, the Department's investigator, testified to the following facts. He received a referral on May 19, 2016, and he interviewed G.V.M., the children, and their paternal grandmother.

The children, two teenagers and one younger child, told Farris that their parents argued a lot, and their mother was in the process of breaking up with their father—G.V.M. "There was a lot of stress in their relationship . . . [and] there was a lot of turmoil in the house at that point in their relationship." On the evening of May 18, 2016, the children heard their parents arguing, and then the children heard five or six gunshots. B.G.M., the oldest child, entered the parents' bedroom, saw both parents lying on the floor and bleeding, and B.G.M. called the police. G.V.M. was arrested and charged with murdering the children's mother.

G.V.M. admitted shooting the children's mother—his wife—but stated that "his wife pulled the gun on him and then he took it from her and shot her."

When Farris met with the children shortly after the incident, "[t]hey were just pretty lethargic. The only thing that I really could get them to express is how much they wanted to stay with their paternal grandmother." The children "call her 'mom,' not even 'grandma,'" and they "were very adamant about staying with their paternal grandmother."

The children's paternal grandmother—with whom they have been residing "pretty much their entire life . . . did most of the day-to-day activities with the children." The children were doing well in her care, and the Department favored the grandmother adopting the children. With the Department's support, she was working with the Department to adopt the children.

**B.    Caseworker's Testimony**

Sergio Huerta, the Department caseworker for G.V.M., testified as follows. When Huerta met with the children, they "appeared stable. But every time that I talked about their father or asked them about their father, they would breakdown [sic] and they would start crying. They said that they did not want to see him, they did not want to be involved with him." Since the incident, the children have not asked for contact of any kind with their father. Huerta testified the children are happy with their grandmother, and they want to stay with her,

The children are living with their grandmother in their parents' home; the grandmother, the parents, and the children lived in the same home before the incident. The children do not have "issues" staying in the home. "That's where they want to remain. That's why we wanted them to remain there." The children are attending school, and all three are doing well.

The grandmother is having some financial difficulties providing for the children because their mother's income is no longer available. The Department has been working with the grandmother to help her obtain available resources, and once the children are adopted, she will receive more benefits and she will be able to fully support the children.

When Huerta spoke with G.V.M., G.V.M. said he wanted his mother to adopt the children. G.V.M. said he wanted to "relinquish to his mother," the children's paternal grandmother. Huerta told G.V.M. he would work with G.V.M.'s mother to help her adopt the children.

Huerta noted that even if G.V.M. is acquitted, G.V.M. will not be able to take care of the emotional and physical needs of the children.

## C.    Guardian Ad Litem's Recommendations

Attorney Mary E. Fuentes-Valdez, the children's guardian ad litem, did not appear at trial; she was represented by attorney Cecilia Garza. Without objection, the trial court asked Garza about Fuentes-Valdez's assessment of the children's circumstances. Garza stated that Fuentes-Valdez "believes that it is in the best interest [of the children] to completely sever [G.V.M.'s parental rights] and that grandmother eventually should be able to adopt."

### G.V.M.'S PARENTAL RIGHTS

The trial court heard testimony that G.V.M. and the children's mother argued a lot and "[t]here was a lot of stress in their relationship." G.V.M. had been arrested and indicted for murdering the children's mother while the children were present in the home, and that even if he were acquitted, he could not provide for the children's physical health and emotional development.

*See Holley*, 544 S.W.2d at 372 (factors (B), (C), (H), (I)). The trial court could have believed that if G.V.M. regained conservatorship of the children, G.V.M.'s conduct would again endanger the children. *See id.* (factors (B), (C), (H)); *see also* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (12). The court could have reasoned that if G.V.M. was acquitted and the children were returned to G.V.M.'s care, G.V.M. could not have provided for the physical and emotional needs of the children or for their safety. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (H), (I)).

The court could also have believed the testimony that terminating G.V.M.'s parental rights and allowing the children's paternal grandmother to adopt the children was in the children's best interests. The children were adamant that they wanted to stay with their paternal grandmother. She had been living with them for "pretty much their entire life" and she was the one who had been taking care of "most of the day-to-day activities with [them]." *See id.* (factors (A), (B), (D), (G)). The children called their grandmother "mom," not "grandma," and the trial court could have reasoned that the children were strongly bonded to their grandmother as their primary caregiver and as the one who filled the role of mother to them. *See id.* (factors (A), (B), (D)). The court could have concluded that the children's present and future physical and emotional needs and safety would be best protected in the grandmother's care. *See id.* (factors (A), (B), (C), (D), (G)).

Reviewing the evidence under the two standards, we conclude the trial court could have formed a firm belief or conviction that terminating G.V.M.'s parental rights to the children was in the children's best interests. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27; *see also* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (12). Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27.

## CONCLUSION

G.V.M. does not challenge the trial court's findings that his course of conduct comprised multiple bases to terminate his parental rights. Instead, he argues the evidence is neither legally nor factually sufficient to support the trial court's finding by clear and convincing evidence that terminating his parental rights is in the children's best interests.

Having examined the evidence under the applicable standards of review, we conclude the evidence pertaining to the trial court's findings is both legally and factually sufficient for the trial court to have found by clear and convincing evidence that terminating G.V.M.'s parental rights to the children was in the children's best interests. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice